**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Criminal Action No. 19-MJ-6717 (JAD)** |
| v. | |
| **WALI DUNCAN, et al.** | **OPINION** |
| **Defendants.** | |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendant Wali Duncan's application for release pending trial, pursuant to 18 U.S.C. § 3142. The undersigned held hearings on this issue on July 31, 2019, and August 5, 2019. After carefully considering Defendant's application and the United States of America's objections, and for good cause shown; and for the reasons set forth below; Defendant's application is **DENIED WITHOUT PREJUDICE**

## I.   PROCEDURAL HISTORY

By Complaint dated July 30, 2019, the United States charged Defendant Duncan with conspiracy to distribute one kilogram or more of heroin contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and in violation of 21 U.S.C. § 846. (Compl. at 3, ECF No. 1). Authorities arrested Defendant Duncan on July 31, 2019, and the undersigned conducted an initial hearing on the same date. (ECF Nos. 20, 59). The Government moved for detention, (Tr. of July 31, 2019 Hr'g at 6:19-21, ECF No. 59), and Defendant Duncan cross-moved for release pending trial. (Id. at 6:22-24). The Court heard substantial argument at that hearing and ultimately granted a three day continuance so as to allow the Government to obtain certain additional information. (Id. at 32:18-33:2). The Court continued Defendant's bail hearing on August 5, 2019, and both the Government

and Defendant Duncan put additional information into the record. (See generally Tr. of Aug. 5, 2019 Hr'g, ECF No. 60). At the conclusion of that proceeding, the Court reserved its decision and directed that Defendant remain in detention. (Courtroom Minutes for Aug. 5, 2019 Hr'g, ECF No. 58).

## II.   LEGAL STANDARD

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required . . ." U.S. Const. Amend. VIII. Although the Eighth Amendment does not "grant an absolute right to bail, there is a substantive liberty interest in freedom from confinement." United States v. Perry, 788 F. 2d 100, 112 (3d Cir. 1986). Consistent with these principles, the Bail Reform Act of 1984 (the "Act") favors pretrial release and imposes a duty on federal courts to make determinations regarding the bail status of federal criminal defendants. 18 U.S.C. §3142(a). Moreover, in the context of such bail determinations, the Act's provisions "effectively limit judicial consideration . . . to two relevant criteria: the risk that the defendant will flee and the risk that he will pose a danger if admitted to bail." United States v. Provenzano, 605 F.2d 85, 93 (3d Cir. N.J. Aug. 21, 1979). The court must not only determine whether an applicant poses such a risk, but also measure them "in terms of conduct that cannot be reasonably safeguarded against by an imposition of conditions upon the release." Id. at 93-94. "Whenever a court can fashion the conditions of an applicant's release in such a manner that the danger may be averted, it must do so and grant the motion for release." Id. at 94 (emphasis added). It is therefore clear that the Court must only deny bail "as a matter of last resort." Id.

When evaluating the sufficiency of potential conditions of release, "the Court will consider the so-called '3142(g) factors': 1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance or firearm; (2) the weight of the evidence

2

against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." United States v. McIntyre, No. 16-13 (KM), 2018 U.S. Dist. LEXIS 5269, at *8 (D.N.J. Jan. 10, 2018) (citing 18 U.S.C. § 3142(g); United States v. Traitz, 807 F.2d 322, 324 (3d Cir. 1986); United States v. Coleman, 777 F.2d 888, 892 (3d Cir. 1985)). "Pursuant to 18 U.S.C. §3142(e), however, if after a detention hearing a court determines that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community,' the court must Order the detention of the person before trial." United States v. Vargas, No. 13-2044 (JS), 2013 U.S. Dist. LEXIS 88944, at *12 (D.N.J. June 25, 2013). The Court notes that, "[i]f the government or court believes detention is appropriate because there is a risk of flight, this must be proved by a preponderance of the evidence." Id. (citing United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986)). "The preponderance of the evidence standard requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." Id. (citing U.S. v. Abdullahu, 488 F. Supp. 2d 433, 438 (D.N.J. 2007)). The Court may also order that a defendant remain in detention if it finds, by clear and convincing evidence, that no combination of conditions will reasonably assure the safety of any person or the community at-large. United States v. Perry, 788 F.2d 100, 106, 114 (3d Cir. 1986)

The Court also acknowledges that, given the nature of the drug offense at issue here, a rebuttable presumption of detention attaches in accordance with § 3142. The rebuttable presumption does not switch the burden of persuasion from the Government to Defendant. It only imposes upon Defendant a burden of production to meet the Government's arguments. See United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986) (In discussing the impact of a rebuttable

3

presumption imposed pursuant to § 3142, the United States Court of Appeals for the Third Circuit noted: "[D]efendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community."). "If defendant meets this burden of production, the burden shifts back to the government to prove a risk of flight by a preponderance of the evidence, or dangerousness by clear and convincing evidence." United States v. Conover, No. 12-2080 (JS), 2012 U.S. Dist. LEXIS 146083, at *8 (D.N.J. Oct. 10, 2012) (citing Perry, 788 F.2d at 114-15). Ultimately, however, "[t]he burden of persuasion always rests with the government." Id.

### III. THE PARTIES' ARGUMENTS

The Government argues that Defendant Duncan presents both a flight risk and a danger to the community, and that no combination of conditions on his release would sufficiently mitigate either risk. (See Tr. of July 31, 2019 Hr'g at 10:13-16, ECF No. 59). With regard to its risk-of-flight argument, the Government points to Defendant's extensive, potential criminal liability: a 10-15 year minimum sentence with the possibility of life in prison. (Id. at 11:10-17). In arguing that Defendant's release would jeopardize the community, the Government focuses on the risks inherent in both drug transactions and corresponding drug use (e.g., overdoses), (id. at 11:18-12:17; 14:1-9), Defendant's own alleged drug use and possession, (id. at 12:18-13:2), Defendant's criminal history, (id. at 17:24-19:8), and Defendant's alleged activities as a high-ranking member of the G-Shine Bloods, including ordering subordinate members to harm people. (Id. at 14:13-17:23; Tr. of Aug. 5, 2019 Hr'g at 4:11-6:10, ECF No. 60). The Government also made a fairly extensive proffer as to its evidence against Defendant Duncan. (Tr. of July 31, 2019 Hr'g at 11:18-12:17; 13:3-14:9, ECF No. 59).

Defendant Duncan argues that he is neither a flight risk nor a danger to the community, as he is a lifelong resident of Newark who gives back to the city through his financial consulting business, (id. at 7:22-8:4), and is actively involved in the lives of his three children, all of whom reside in the area. (Id. at 8:14-19). Defendant further argues that it would be possible to minimize any potential risk of flight or danger to the community through the imposition of restrictive conditions of release, including home incarceration, substance abuse testing, and the appointment of a third-party custodian acceptable to Pretrial Services. (Id. at 9:7-10:6; Tr. of Aug. 5, 2019 Hr'g at 15:7-14, ECF No. 60). Finally, Defendant argues that, while he does have a prior conviction on his record, he was released from incarceration related to that offense in 2006, finished a two-year term of supervised release without incident, and has not been arrested since. (Tr. of Aug. 5, 2019 Hr'g at 14:13-18, ECF No. 60).

## IV. THE COURT'S FINDINGS

### a. Risk of Flight

The Court finds that Defendant Duncan has satisfied his burden of production on the risk of flight issue by presenting information regarding his lifelong ties to the community, as well as the presence of his minor children in the area. Moreover, while the potential penalties Defendant faces, if convicted, are substantial, the Court finds that a combination of conditions on release, including the imposition of home incarceration with GPS monitoring, would reasonably assure Defendant's appearance at trial.

### b. Danger to the Community

Having found that Defendant's potential risk of flight does not provide an adequate basis for detention, the Court turns to whether Defendant's release would present a danger to the community. While the Court is not certain that Defendant has met his burden of production on the

dangerousness issue,[1] it nevertheless finds that no combination of conditions would reasonably assure the safety of the community upon his release.

Given Defendant Duncan's alleged involvement in the distribution of dangerous narcotics, and his alleged activities as a high-ranking member of the G-Shine Bloods, the Court finds that Defendant's release would present a danger to the community. The Court must, therefore, consider the factors enumerated in 18 U.S.C. § 3142(g) to determine "whether there are conditions of release that will reasonably assure" the community's safety. 18 U.S.C. § 3142(g).

Considering factors 1 (the nature and circumstances of the offense charged) and 2 (the weight of the evidence against the person), the Court notes that Defendant is charged with participating in a conspiracy to distribute a significant quantity of heroin and fentanyl. Moreover, based on the Government's proffer, it appears that Defendant played a pivotal role in that alleged operation and is also a senior member of the G-Shine Bloods. In that capacity, Defendant has, allegedly, not only led a significant drug trade operation, but has also directed lower-ranking gang members to harm other people. (Tr. of Aug. 5, 2019 Hr'g at 4:11-6:10, ECF No. 60). The Government's proffer also suggests that the evidence against Defendant is considerable. (Tr. of July 31, 2019 Hr'g at 12:5-14:9, ECF No. 59). These factors both weigh heavily against release.

Turning to Defendant's history and characteristics, the Court finds that two issues are particularly salient. First, the record reflects that Defendant has not been arrested since 2003. (Id. at 8:20-25). At that time, however, he plead guilty to conspiracy to distribute heroin and cocaine, and served a 27-month sentence followed by two years of supervision. (Id. at 18-1-5). Defendant, therefore, has some history of distributing dangerous narcotics. Second, despite defense counsel's

---

[1] It seems that Defendant's proffer on this point was limited to noting that he was last arrested in 2003, and providing alternative explanations for a tattoo and certain social media posts that the Government argues are gang-related.

strong arguments to the contrary, Defendant's active social media presence supports the Government's characterization of Defendant's role as a senior member of the G-Shine Bloods. (Id. at 15:9-17-20; Tr. of Aug. 5, 2019 Hr'g at 7:7-8:23, ECF No. 60).

Finally, the Court must consider the nature and seriousness of the potential danger associated with Defendant's release. As noted above, the danger to the community is twofold. First, if the Government is correct, Defendant may continue his alleged role in the drug operation at issue in this case. Second, Defendant may resume his alleged leadership role with the G-Shine Bloods. Both activities would obviously endanger the community. Restrictive conditions on release, such as home incarceration, would not sufficiently mitigate that risk. The Government's proffer reflects that, given Defendant's leadership position, he often directed others to carry out portions of the drug operation. Home incarceration offers no safeguards against such conduct. If Defendant remains in custody, however, where authorities routinely observe and record inmates' telephone conversations, he would find it more difficult to undertake leadership activities.

After carefully evaluating the record, including Pretrial Service's investigation and recommendations, the Court finds, by clear and convincing evidence, that Defendant's release would present a danger to the community, and that no combination of conditions on Defendant's release would sufficiently reduce that risk at this time. The Court must, therefore, deny Defendant's bail application without prejudice.

## V.    CONCLUSION

Based on the foregoing, Defendant Duncan's bail application is **DENIED WITHOUT PREJUDICE**. An appropriate form of Order accompanies this Opinion.

JOSEPH A. DICKSON, U.S.M.J.